**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 14-209-2** |
| | **:** | |
| **MALCOLM MOORE** | **:** | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                                   **November 30, 2020**

A convicted armed bank robber having completed approximately twenty-two percent of his final sentence seeks compassionate release arguing he is better prepared than his younger sister or cousin to care for his sixty-three year old mother suffering from early onset dementia and he otherwise fears contracting COVID-19 while incarcerated at FCI Petersburg.  Congress defines when we can reduce our final sentences mindful of sentencing policy promoting the finality of sentences.  Among other reasons, we must find extraordinary and compelling circumstances which the Sentencing Commission defined as including the care of the incarcerated man's minor child or children, spouse or registered partner.  The Sentencing Commission's guidelines do not include caring for an ill mother as an extraordinary and compelling circumstances.  But even if it did, releasing an armed bank robber at this early stage of his sentence when he has a younger sister and cousin otherwise capable of taking care of his mother is not extraordinary and compelling.  We are also not persuaded his fear of contracting COVID-19 as a young healthy man in FCI Petersburg creates a compelling and extraordinary circumstance.  He also does not meet Congress' requirement of not posing a risk of danger to the community under a set of release conditions given his active role in orchestrating armed bank robberies.  We deny his motion for compassionate release without prejudice and deny his alternative request for resentencing.

I.      Facts

Our jury found Malcolm Moore and three other persons robbed two Wells Fargo Bank branches.[1] During both planned robberies, each of the four co-conspirators played a unique role.[2] One co-conspirator – a Wells Fargo employee – signaled to the others when they should enter the branches.[3] When given the signal, Mr. Moore and two of his co-conspirators entered wearing masks and armed with firearms, announced a robbery, and ordered the employees and customers to the floor at gunpoint.[4] While another co-conspirator remained by the entrance to make sure nobody entered or left, Mr. Moore and another co-conspirator jumped over the customer counter and demanded money from the bank employees.[5] In each robbery, Mr. Moore brandished a gun and pointed it at employees and customers.[6] Mr. Moore and his co-conspirators stole over $150,000 total from the two banks.[7]

Subsequent investigation revealed Mr. Moore helped orchestrate both robberies.[8] Federal agents arrested him in Georgia two months after the robberies.[9] The United States indicted Mr. Moore on five counts: conspiracy to commit armed bank robbery, armed bank robbery and aiding and abetting, and carrying, using, and aiding and abetting the use and carrying of a firearm in relation to a crime of violence.[10] A jury found Mr. Moore guilty on all five counts.[11] After considering Mr. Moore's significant role in the robberies and the then-existing mandatory minimum sentences for gun charges, we sentenced Mr. Moore to 385 months imprisonment and two years of supervised release.[12] Mr. Moore appealed his sentence, arguing the First Step Act's amendment to the stacking language in section 924(c) should retroactively apply to reduce his mandatory minimum sentence.[13] Our Court of Appeals rejected Mr. Moore's arguments and affirmed his sentence.[14]

Mr. Moore is currently serving his sentence in the medium security division of Federal

Correctional Institution Petersburg.[15] Accounting for credit for time served, Mr. Moore has served approximately eighty-two months, or 21.30%, of his sentence.[16] His release date is set for May 31, 2041.[17] While in federal custody, Mr. Moore has completed various classes and worked as an orderly.[18]

### A. His mother's early onset dementia.

Mr. Moore's sixty-two-year-old[19] mother Joan Hinds lives in Philadelphia with her twenty-one-year-old daughter (and Mr. Moore's sister), Tracyann Hinds.[20] Mr. Moore's mother suffers from early-onset dementia, although it is unclear when she was first diagnosed.[21] It is our understanding dementia in its early stages may cause symptoms like forgetfulness, vision problems, poor judgment, and mood swings.[22] As dementia progresses, a patient can face trouble speaking, swallowing, or walking, severe memory loss, and deepening confusion about basic things like time, place, and life events.[23] According to her treating physician, Ms. Hinds' dementia "impacts her ability to perform her activities of daily living," resulting in her need for supervision and assistance "at all times."[24] Ms. Hinds' adult niece, Tamara Hinds, states her aunt has forgotten to eat, bathe, pay bills, and turn off her gas stove.[25] Ms. Hinds has also apparently gotten lost on her way back home from visiting a relative who lives just a few blocks away.[26] Her condition is expected to worsen over time.[27]

Mr. Moore and Tracyann Hinds are concerned about Tracyann's ability to care for their mother despite living in the same home because she has a full-time job from Monday through Friday.[28] Tracyann loves her mother, but "do[es] not feel equipped to fully care for" her.[29] Mrs. Hinds' niece Tamara expresses similar concerns about Tracyann.[30] Tamara helps her aunt as much as she can, but lives forty minutes away, works full-time, and cares for a family of her own.[31]

### B.     Mr. Moore's plan if granted compassionate release.

Mr. Moore planned to move in with his mother and sister in their Philadelphia home upon release.[32] He claimed he would support himself financially by working in construction and registering with a home health care company to be his mother's primary caretaker.[33]

### C.     COVID-19 affecting FCI Petersburg inmates.

Mr. Moore, a "young and healthy" twenty-seven-year-old, explains incarcerated persons in FCI-Petersburg have contracted "coronavirus disease 2019," also known as COVID-19.[34] As we understand today from our own review, COVID-19 is a respiratory disease spreading mainly through droplets produced when an infectious person, even one who is asymptomatic, talks, coughs, or sneezes.[35] The virus can also be spread through the air.[36] The practice of social distancing – staying six feet away from others – can help reduce the spread of the virus.[37]

COVID-19 poses a serious global public health risk. As of November 30, 2020, the United States Centers for Disease Control and Prevention reported a total of 13,142,997 cases of COVID-19 in the United States with 265,166 total deaths caused by the virus.[38] Older adults and individuals at any age with underlying medical conditions such as cancer, chronic kidney disease, COPD (chronic obstructive pulmonary disease), or serious heart conditions are at an increased risk of severe illness from COVID-19.[39]

Mindful correctional facilities face unique challenges in controlling the transmission of COVID-19, the Centers for Disease Control has issued guidance to prisons and correctional facilities to help them prevent the spread of COVID-19.[40] Following this guidance, the Bureau of Prisons adopted aggressive safety measures, assuring "maintaining safety and security of [its] institutions is [its] highest priority."[41] As of November 30, 2020, FCI Petersburg reports it has eight active COVID-19 cases – five inmates and three staff members – in an inmate population of

4

1,460.[42] Since the outbreak began, the Bureau of Prisons has confirmed 221 COVID-19 cases at FCI Petersburg having administered tests to 661 inmates.[43]

### D. Mr. Moore exhausted his remedies with the Bureau of Prisons.

Mr. Frazier exhausted his administrative remedies.[44] He submitted a request for compassionate release to the Warden of FCI Petersburg on August 11, 2020.[45] He moved for relief on November 13, 2020, over two months after the September 11, 2020 response deadline, after not having received any response from the Warden regarding his request.[46]

## II. Analysis

Mr. Moore moves for compassionate release arguing the need to care for his ill mother and the presence of COVID-19 in FCI Petersburg warrant his early release.[47] The United States argues these reasons are not extraordinary and compelling, and even if they are, Mr. Moore presents a danger to his community.[48] We deny Mr. Moore's motion because he fails to present an "extraordinary and compelling reason" for his release and he presents a danger to the community.

Congress allows us to reduce a sentence through compassionate release if we determine: (1) the incarcerated movant meets administrative exhaustion requirements, (2) "extraordinary and compelling reasons"[49] warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (4) the applicable sentencing factors under 18 U.S.C. §3553(a) warrant a reduction.[50] The applicable policy statements issued by the Sentencing Commission urge us to consider whether Mr. Moore would be a danger to the community if released.[51] Because Mr. Moore has indisputably exhausted his administrative remedies, we assess whether Mr. Moore presents an extraordinary and compelling reason for release, whether he presents a danger to the community, and whether the sentencing factors warrant a reduction.

**A.    The need for Mr. Moore to care for his sick mother is not an extraordinary and compelling reason for his release.**

Mr. Moore first argues he should be released because he is the only individual available to properly care for his mother suffering from dementia.[52] The United States argues caring for parents is not an extraordinary and compelling reason for release, and even if it is, Mr. Moore fails to establish himself as the only available caregiver.[53] We agree Mr. Moore fails to establish he is the only individual able to care for his mother.

The United States accurately states caring for ill, incapacitated, or elderly parents is not explicitly listed by the Bureau of Prisons as an extraordinary and compelling reason to reduce a final sentence. But as both parties point out, courts generally liken such situations to the explicitly listed "family circumstances," which provide a petitioner may present an extraordinary and compelling reason for release if (1) the caregiver of the petitioner's minor child or children dies or becomes incapacitated or (2) the petitioner's spouse or registered partner becomes incapacitated and the petitioner is the partner's "only available caregiver."[54]

Judges in this District have yet to find care for elderly or ill parents raises to the level of extraordinary and compelling circumstances warranting release.[55] In *United States v. Grasso*, for example, Judge Pappert denied a motion for compassionate release premised on the petitioner's desire to care for his elderly mother, expressly declining to extend the Bureau of Prisons' definition of family circumstances beyond petitioner's spouse, registered partner, or the caregiver of petitioner's minor children.[56] Judge Pratter also denied compassionate release of a petitioner who wanted to care for his ill mother, noting the petitioner has an adult sister who is employed, lives with the mother, and can provide some level of home care, even though "that assistance may be diminished due to her full-time employment."[57]

Consistent with Judge Pratter's reasoning, other courts denied motions for compassionate

release premised on sick or elderly parents in the absence of strong evidence the petitioner is the *sole* individual capable of caring for the parent. Judge McNulty, for example, recently denied a motion for release based on a petitioner's need to take care of his aged and ailing mother because the inmate had two adult siblings capable of caring for his mother.[58] He made this finding although one of the siblings submitted a letter stating he is too busy to help due to family obligations and employment.[59] In *United States v. Henry*, Chief Judge Mauskopf similarly found a petitioner's desire to care for an elderly mother with dementia and blindness and an elderly father with obstructive pulmonary disease and pulmonary hypertension did not warrant an extraordinary and compelling reason for release because a home health aide provided, and would continue to provide, daily care for the parents.[60]

Mr. Moore's circumstances are analogous to those evaluated by Judges Pratter and McNulty and Chief Judge Mauskopf. While we do not undervalue the severity of Ms. Hinds' condition in any way or diminish Mr. Moore's concern for his mother, Mr. Moore does not demonstrate he is his mother's "only available caregiver."  Mr. Moore has an adult sister who lives with his mother and a cousin who lives forty minutes away who visits with his mother. While they understandably may feel overwhelmed because they have full-time jobs, they do not state they are somehow incapacitated or physically unable to care for Ms. Hinds. His cousin also notes Ms. Hinds has a relative who lives just a few blocks away from Ms. Hinds. Although it is regrettable Mr. Moore's incarceration places a greater burden on his family members to care for his mother, we cannot find Mr. Moore is his mother's only available caregiver under these circumstances.

The availability of Ms. Hinds' niece, daughter, and other family members distinguishes Mr. Moore's case from the cases he offers as authority. For example, Judge Young granted compassionate release in *United States v. Bucci* based on a petitioner's need to care for his ailing

7

mother because the petitioner established himself as the only available caregiver.[61] In granting the motion, Judge Young expressly distinguished the petitioner's unique situation from the more common situation in which petitioners "have siblings or other family members able to care for their parents."[62] In *United States v. Lisi*, Judge Failla found the petitioner's need to care for his very sick mother constituted an extraordinary and compelling reason for release because "[petitioner], his mother, and numerous others have provided evidence to the [c]ourt indicating…whatever assistance she is currently receiving from home health aides is inadequate."[63]

Unlike petitioners in *Bucci* and *Lisi*, Mr. Moore does not adduce evidence to find he is the only available caregiver for his mother. We lack a basis to find Mr. Moore's need to care for his mother is an extraordinary and compelling circumstance warranting a reduction in his sentence.

### B. Mr. Moore's generalized fear of contracting COVID-19 does not warrant his release.

Mr. Moore, a "young and healthy" twenty-seven-year-old, next argues for his early release because multiple FCI-Petersburg incarcerated persons tested positive for COVID-19 and his living conditions make it impossible to socially distance. As of November 30, 2020, FCI Petersburg has eight confirmed cases of COVID-19 out of 1,460 total inmates. Mr. Moore, as far as we can tell, does not have any underlying medical conditions leading to an increased risk of serious illness due to COVID-19.

While we appreciate the gravity of the pandemic's impact across the globe, especially within the prison population, we do not find Mr. Moore's generalized fear of contracting the virus to be an extraordinary and compelling reason for his release. Our Court of Appeals recently instructed "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."[64] Consistent with this

reasoning, courts have generally required the movant establish two things: "(1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed."[65] Mr. Moore, a healthy twenty-seven-year-old, fails to provide evidence of serious medical conditions putting him at a higher risk of serious illness from COVID-19.

His fear of contracting the virus is not an extraordinary and compelling reason to reduce his carefully considered sentence based on the jury's verdict and affirmed by our Court of Appeals.

### C. Mr. Moore poses a risk of danger to the community.

Even assuming Mr. Moore presented extraordinary and compelling reasons for his release, Congress requires we consider whether Mr. Moore presents "a danger to the safety of any other person or to the community" before we reduce a carefully considered sentence. Mr. Moore fails to show he warrants a sentence reduction.

The Sentencing Commission's policy statement, while not binding, nonetheless offers helpful guidance and provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[66] Section 3142(g) sets out factors we must consider when deciding whether to release a defendant pending trial.[67] These factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or "involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[68]

These factors weigh against Mr. Moore's release at this relatively early stage of his final

9

sentence. Mr. Moore orchestrated and participated in two armed bank robberies. During each robbery, Mr. Moore pointed a gun at bank employees and customers to threaten them and steal a significant sum of money. A jury found him guilty of all charges. We recognize Mr. Moore did not have a criminal history before this point, but we do not afford this fact much weight because of the young age when he committed the robberies. The serious and violent nature of Mr. Moore's crimes compels us to find he presents a danger to the community.

As we find Mr. Moore does not present an "extraordinary and compelling" reason for compassionate release and presents a danger to his community, we need not assess the 18 U.S.C. §3553 factors.

### III. Conclusion

We deny Mr. Moore's motion for compassionate release without prejudice and deny his alternative request for resentencing on his gun charges.[69]

---

[1] ECF Doc. No. 190; Presentence Investigation Report ¶¶ 10-18, (Dec. 7, 2017).

[2] Presentence Investigation Report ¶¶ 10-18

[3] *Id.* ¶¶ 11, 15.

[4] *Id.* ¶¶ 12, 16.

[5] *Id.* ¶¶ 13, 17.

[6] *Id.*

[7] *Id.* ¶¶ 14, 18.

[8] *Id.* ¶ 22.

[9] *Id.* ¶ 25.

---

[10] ECF Doc. No. 27.

[11] ECF Doc. No. 190.

[12] ECF Doc. No. 343 at 41-42, 65-68.

[13] *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020); ECF Doc. No. 315.

[14] *Wilson*, 960 F.3d at 151.

[15] ECF Doc. No. 379 at 2, n.1.

[16] Presentence Investigation Report at 2.

[17] ECF Doc. No. 378 at 4.

[18] Presentence Investigation Report ¶¶ 100, 103.

[19] Mr. Moore states his mother is sixty-two years old in his Request for Compassionate Release, while, three months later, his counsel represents she is sixty-three years old. ECF Doc. No. 374-3 at 4; ECF Doc. No. 374 at 2.

[20] ECF Doc. No. 374-3 at 4.

[21] ECF Doc. No. 374-1.

[22] Johns Hopkins Med., *Early Onset Alzheimer's Disease* (last visited Nov. 18, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/alzheimers-disease/early onset-Alzheimer-disease.

[23] *Id.*

[24] ECF Doc. No. 374-1.

[25] ECF Doc. No. 374-2 ¶¶ 3, 6-8, 14.

[26] *Id.* at ¶ 9.

[27] ECF Doc. No. 374-1.

[28] ECF Doc. No. 374-3 at 4; ECF Doc. No. 379-1 ¶ 10.

[29] ECF Doc. No. 379-1 ¶ 12.

[30] ECF Doc. No. 374-2 ¶¶ 13-14.

[31] *Id.* ¶ 12.

---

[32] ECF Doc. No. 374-3 at 4.

[33] *Id.*

[34] ECF Doc. No. 374 at 4-5, 11.

[35] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *Social Distancing: Keep a Safe Distance to Slow the Spread*, Centers for Disease Control and Prevention. (last visited Nov. 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.

[36] *Id.*

[37] *Id.*

[38] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19) Data Tracker*, (last visited Nov. 30, 2020), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.

[39] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *People with Certain Medical Conditions*, Centers for Disease Control and Prevention. (last visited Nov. 25, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

[40] National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention (last visited Nov. 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

[41] Federal Bureau of Prisons, *Updates to BOP COVID-19 Action Plan, Inmate Movement* (last visited Nov. 25, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[42] Federal Bureau of Prisons, *COVID-19 Cases* (last visited Nov. 30, 2020), https://www.bop.gov/coronavirus/.

[43] Federal Bureau of Prisons, *COVID-19 Inmate Test Information* (last visited Nov. 30, 2020), https://www.bop.gov/coronavirus/.

[44] The United States does not dispute Mr. Moore exhausted his administrative remedies.

[45] ECF Doc. No. 374-3.

[46] ECF Doc. No. 374.

12

---

[47] *Id.* at 7-11 (citing 18 U.S.C. § 3582(c)(1)(A)).

[48] ECF Doc. No. 378.

[49] Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines outlines circumstances constituting "extraordinary and compelling reasons" under which district courts may reduce a term of imprisonment:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serios deterioration in physical or mental health because of the aging process; and (3) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the [Bureau of Prisons], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13, Application Note 1(A)-(D).

13

[50] 18 U.S.C. § 3582.

[51] *See, e.g.*, *United States v. Slone*, No. 16-400, 2020 WL 3542196, at *8-9 (E.D. Pa. June 30, 2020).

[52] ECF Doc. No. 374 at 7-11.

[53] ECF Doc. No. 378 at 8-10.

[54] United States Sentencing Guidelines, § 1B1.13, Application Note 1(C); *see, e.g., United States v. Williams*, No. 11-223-1, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020); *United States v. Dunich-Kolb*, No. 14-150, 2020 WL 6537386, at *8-9 (D.N.J. Nov. 5, 2020); *United States v. Henry*, No. 13-91, 2020 WL 3791849, at *1, 4 (E.D.N.Y. July 6, 2020).

[55] We also note two cases in which the court did not address an inmate's arguments relating to care of an ill sibling or parent. *See United States v. Gordon*, No. 09-441, 2020 WL 4334825, at * 2-3 (E.D. Pa. July 28, 2020) (denying motion for compassionate release where petitioner wanted to assist his older sister with "severe nerve damage in her back and legs"); *United States v. Le*, No. 10-742-2, 2020 WL 6262102, at *1, 3 (E.D. Pa. Oct. 22, 2020) (denying release of a petitioner who sought to assist his sister in carrying for an elderly grandmother who could not care for herself).

[56] No. 17-436, 2020 WL 5217131, at *1-2 (E.D. Pa. Sept. 1, 2020).

[57] *Williams*, 2020 WL 4756738, at *5.

[58] *Dunich-Kolb*, 2020 WL 6537386, at *8-9.

[59] *Id.* at *8.

[60] *Henry*, 2020 WL 3791849, at *1, 4.

[61] 409 F. Supp. 3d 1, 1-3 (D. Mass. Sept. 16, 2019).

[62] *Id.* at 2.

[63] 440 F. Supp. 3d 246, 251-52 (S.D.N.Y. Feb. 24, 2020).

[64] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[65] *United States v. Phillips*, No. 09-718, 2020 WL 5076753, at *3 (E.D. Pa. Aug. 27, 2020) (citation omitted).

[66] *U.S. v. Clausen*, No. 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (citing *Rodriguez*, 2020 WL 1627331, at *11 (quoting U.S.S.G. § 1B1.13(2))).

---

[67] *Id.*

[68] *Id.* (citing 18 U.S.C. § 3142(g)(1)–(4)).

[69] Mr. Moore also argues the First Step Act's amendment of mandatory minimum sentences for Section 924(c) crimes warrants resentencing citing to our opinion in *United States v. Adeyemi*, -F.Supp.3d --,  No. 06-124, 2020 WL 3642478, (E.D. Pa. July 6, 2020). *See* ECF Doc. No. 374 at 13 n.8, 14-15, 18-19. *Adeyemi* is distinguishable. Mr. Adeyemi's counsel explicitly argued the stacking of section 924(c) constituted an extraordinary and compelling reason for compassionate release under the "catchall" provision of the Section 1B1.13's Application Note. *See United States v. Adeyemi*, No. 06-124, ECF Doc. No. 180  (E.D. Pa. May 27, 2020).  Mr. Moore instead argues we should consider the sentencing amendments only after we determine an extraordinary and compelling reason warranting release exists. We are also mindful our Court of Appeals already rejected Mr. Moore's argument for retroactive application of the First Step Act to reduce his sentence. *Wilson*, 960 F.3d at 151. We decline to consider the arguments relating to resentencing under section 924(c) here.