IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 14-209-2 |
| | : | |
| MALCOLM MOORE | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                    **March 26, 2024**

We sentenced a man in March 2018 to 385 months in prison after the jury convicted him of two-armed bank robberies. We imposed this sentence consistent with the stacking of armed bank robbery sentences required by Congress in March 2018. Congress changed how we may stack these sentences nine months later in December 2018 but did not authorize judges to reduce earlier (much higher) sentences based on this change. We could not then reduce his sentence under new law.

Congress also authorized the United States Sentencing Commission to define when an incarcerated person may seek compassionate release upon showing an extraordinary and compelling reason for release, he is not a danger to the community upon release, and his release is consistent with factors otherwise defined by Congress. The Sentencing Commission did not issue guidance on whether disparate sentences created by this December 2018 change in how we stack consecutive sentences could allow a judge to find an extraordinary and compelling reason for compassionate release until a few months ago. For example, we denied the man's 2022 request for release based on this disparate sentence consistent with our Court of Appeals's direction absent guidance from the Sentencing Commission and because we found he continued to present a danger to the community and did not satisfy Congress's other factors.

But we are now in a different world after the Sentencing Commission amended the

Guidelines with a policy statement a few months ago counseling judges may find the widely disparate higher sentence could be an extraordinary and compelling reason for release based on present law after ten years of custody.

We today agree with the convicted man we could now reduce his 385-month sentence after serving the amended mandatory minimum sentence of fourteen years if we find he is not a danger to the community and otherwise satisfies Congress's other factors. But we cannot reduce his sentence today to be effective in approximately four years. We lack a basis to find he has now suddenly become less dangerous and otherwise overcomes our oft-repeated concerns with release. We decline to reduce his sentence without prejudice to return with current information closer to a possible release after serving mandatory minimums by overcoming our repeated concerns beyond what we expect of all persons rehabilitating under our Bureau of Prisons's custody.

I.   **The public record of Mr. Moore's conviction and challenges to conviction.**

Malcolm Moore and three others conspired to rob two Wells Fargo Bank branches with firearms.[1] The four first robbed a bank branch on November 4, 2013.[2] Mr. Moore and two others donned masks and wielded firearms as they entered the bank.[3] Mr. Moore jumped the bank counter and demanded money from the employees.[4] Mr. Moore waived his firearm in the air, pointed it at the branch's employees and one bank customer, and threatened to shoot them.[5] The four fled the bank after stealing $83,059.00.[6] One of the employees recounted an individual pointed a gun in the employee's face for five to ten seconds.[7] Another employee recounted one of the armed robbers pointed a gun in his face and asked if he wanted to die for Wells Fargo's money.[8]

Mr. Moore and two of the others planned to drive to Georgia to "lay low" following the robbery.[9] A North Carolina Sheriff's Deputy pulled them over for speeding.[10] The Sheriff's Deputy issued a warning and confiscated $77,791.00 in cash discovered during a consented-to vehicle

search.[11] Mr. Moore and his co-conspirators decided to rob another Wells Fargo branch because the Sheriff's Deputy confiscated the money.[12]

Mr. Moore and the three others returned to our District and planned to rob another Wells Fargo Bank branch in this District eight days later.[13] One member of the group entered the bank to determine the number of customers present and then signaled to Mr. Moore and the others to enter the bank and commit the robbery.[14] Mr. Moore and two others again donned masks and wielded firearms as they entered the bank.[15] Mr. Moore again jumped the bank counter and demanded money from the branch's employees.[16] Mr. Moore again waived his firearm in the air and pointed it at the branch's employees and one bank customer.[17] The four fled the bank after stealing $70,470.00.[18]

Our Grand Jury charged Mr. Moore with one count of conspiracy to commit armed bank robbery, two counts of armed bank robbery, two counts of carrying, using, and brandishing a firearm during and in relation to a crime of violence, and one count of aiding and abetting.[19] Mr. Moore proceeded to trial.[20] A jury convicted Mr. Moore on all counts.[21]

We sentenced Mr. Moore to 385 months' imprisonment and two years' supervised release in March 2018.[22] We sentenced Mr. Moore to one month of imprisonment as to the conspiracy to commit armed bank robbery count and the two armed bank robbery counts.[23] We sentenced Mr. Moore to eighty-four months' imprisonment as to the first (of two) counts charging carrying, using, and brandishing a firearm during and in relation to a crime of violence.[24] We sentenced Mr. Moore to 300 months' imprisonment as to the second count charging carrying, using, and brandishing a firearm during and in relation to a crime of violence.[25] We imposed Mr. Moore's 300 month sentence to run consecutively with his eighty-four month sentence as then required by Congress.[26] We considered Mr. Moore's role as the intimidator during the armed robberies.[27] We noted the

seriousness of two armed bank robberies.[28]

### *Mr. Moore's first compassionate release motion.*

Mr. Moore moved for compassionate release for the first time in November 2020.[29] Mr. Moore argued his need to care for his mother who suffers from early onset dementia coupled with his risk of contracting COVID-19 warranted his release.[30] Mr. Moore argued he is not a danger to the community and claimed rehabilitation through his completing eight education courses in 2015 forming post-incarceration employment plans.[31] We denied Mr. Moore compassionate release without prejudice finding his need to care for his mother coupled with the risk of contracting COVID-19 did not constitute extraordinary and compelling reasons.[32] We found Mr. Moore as an armed bank robber posed a danger to the community.[33]

### *Mr. Moore's second compassionate release motion.*

Mr. Moore moved for compassionate release for the second time in March 2022.[34] Mr. Moore argued the risk of contracting COVID-19, Mr. Moore's youth at the time of committing the crime, the sentencing discrepancies Congress created by amending section 924(c), his rehabilitation while incarcerated, and the need to care for his ailing mother warranted his release.[35] Congress through the First Step Act reduced the mandatory minimum sentence for section 924(c) violations after we sentenced Mr. Moore. But Congress did not apply the reductions retroactively.[36] Mr. Moore claimed rehabilitation by highlighting his "[o]utstanding work performance" while incarcerated, three "minor" disciplinary infractions, and post-incarceration employment plans.[37]

We denied Mr. Moore's second motion about two years ago without prejudice.[38] We rejected Mr. Moore's repeated arguments the risk of contracting COVID-19 and his need to care for his ailing mother constituted extraordinary and compelling reasons warranting his release as

4

we did in 2020.³⁹ We declined to consider the disparities in section 924(c) sentences as extraordinary and compelling consistent with the caselaw and absence of a policy statement from the Sentencing Commission.⁴⁰ There did not exist an applicable policy statement defining extraordinary and compelling reasons warranting compassionate release when we decided Mr. Moore's 2022 Motion for compassionate release.⁴¹ Our Court of Appeals decided *Andrews* in the absence of a binding policy statement and held Congress through section 3582(c)(1)(A) prevented us from considering a retroactive change in law creating an unusually long sentence as an extraordinary and compelling reason warranting compassionate release.⁴² We found Mr. Moore remained a danger to the community despite his completing educational courses, demonstrating strong work performance, and dedicating himself to the Muslim faith while incarcerated.⁴³

**II.    Analysis**

Mr. Moore now moves to reduce his sentence for a third time.⁴⁴ Mr. Moore argues the United States Sentencing Commission's amendment to the Sentencing Guidelines a few months ago allows us to now find the disparity in his sentence compared to a sentence imposed after the First Step Act is an extraordinary and compelling reason given the change of law warranting his release.⁴⁵ He specifically cites the present 385-month sentence cannot be justified given the present sentencing law which would require us to sentence him to a minimum of 168 months' imprisonment for his section 924(c) violations.⁴⁶ Mr. Moore also argues Congress's section 3553(a) factors warrant his release because he committed the armed bank robberies during his early twenties, Mr. Moore has since matured while incarcerated, and Congress's reduction of these stacked sentences coupled with Mr. Moore already serving nearly ten years of his sentence satisfies federal sentencing aims.⁴⁷ Mr. Moore again argues he is not a danger to the community because he did not physically injure victims and completed several education courses while incarcerated.⁴⁸

Mr. Moore serves on the Suicide Companion Program at FCI Petersburg.[49] Mr. Moore also admits he received a disciplinary infraction for possessing a cell phone in December 2023.[50] Mr. Moore *pro se* asked for his immediate release but his counsel conceded the earliest we could release him based the mandatory minimum sentence would be fourteen years of incarceration or approximately four years from today.[51]

The United States counters the Sentencing Commission's recent amendment creating Guidelines section 1B1.13(b)(6) allowing us to consider unusually long sentences resulting from a change in law is unconstitutional because it conflicts with Congress's directive not to apply section 924(c)'s new mandatory minimum sentences retroactively.[52] The United States argues our Court of Appeals's interpretation of section 3582(c)(1)(A)(i) in *United States v. Andrews* precludes us from considering a non-retroactively applied change of law as an extraordinary and compelling reason warranting an incarcerated person's release.[53]

Mr. Moore responds the new policy at section 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority because Congress empowered the Sentencing Commission to promulgate policy statements interpreting section 3582(c) and defining "what should be considered extraordinary and compelling" reasons warranting sentence reduction.[54] Mr. Moore responds section 1B1.13(b)(6) does not conflict with our Court of Appeals's interpretation of section 3582(c)(1)(A) in *United States v. Andrews* because there did not exist an applicable policy statement when our Court of Appeals decided *Andrews*.[55] Mr. Moore responds our Court of Appeals in *Andrews* noted section 3582(c)(1)(A) requires sentence reductions be "consistent with applicable [Sentencing Commission-issued] policy statements[,]" and Congress delegated to the Sentencing Commission the authority to issue policy statements defining extraordinary and compelling reasons warranting release, but there did not then exist a policy statement defining

6

extraordinary and compelling for incarcerated person-filed motions.[56]

Counsel focused on whether the recent amendments allow us to find the disparity in the sentence based on sentences after the change in the law creates an extraordinary and compelling reason for release. Counsel presented thoughtful analysis. We agree with Mr. Moore on this point finding the Commission enjoyed the constitutional authority granted by Congress to define extraordinary and compelling reasons and has now done so after *Andrews*. But we still cannot find a basis for release. We have no basis to find Mr. Moore meets the other factors necessary for release in approximately four years. He must show: (1) extraordinary and compelling reasons warranting release; (2) he is not a danger to the safety of others or the community; and (3) Congress's section 3553(a) factors militate in favor of his release.[57] Failing to satisfy one of these factors requires we deny the incarcerated person compassionate release.[58]

We analyze compassionate release motions under four laws set by Congress:

(1) section 3582(c)(1)(A) requires we consider its section 3553(a) factors before granting compassionate release;[59]

(2) section 3553(a)(5) requires we consider a pertinent policy statement the Sentencing Commission issues when reviewing the section 3553(a) factors;[60]

(3) the Sentencing Commission through section 994(a)(2)(C) may issue general policy statements concerning sentence modifications under section 3582(c);[61] and,

(4) section 994(t) authorizes the Sentencing Commission to issue policy statements defining extraordinary and compelling reasons warranting compassionate release.[62]

The problem facing judges and counsel since December 2018 arises from the Sentencing Commission lacking a quorum for business and not able to issue a pertinent policy statement defining extraordinary and compelling reasons for incarcerated person-filed compassionate release

7

motions until November 2023.[63] So our Court of Appeals and the Court of Appeals for the Seventh Circuit considered the pre-November 2023 policy statement as non-binding for courts considering incarcerated person-filed motions.[64] Our Court of Appeals explained the Sentencing Commission may one day issue an applicable policy statement defining extraordinary and compelling reasons in incarcerated person-filed motions but held it could not, in 2021, "effectively update the Commission's extant policy statement" for the Commission.[65]

But we are in a different situation today. The Sentencing Commission amended the Sentencing Guidelines in November 2023 to permit us to consider non-retroactive changes in law causing an incarcerated person to serve an "unusually long sentence" as an extraordinary and compelling reason warranting release.[66] The incarcerated person must serve ten years of their sentence before we can consider the non-retroactive change in law extraordinary and compelling.[67]

### A. Mr. Moore's unusually long sentence constitutes an extraordinary and compelling reason for release after ten years.

We sentenced Mr. Moore to 385 months' incarceration in March 2018 consistent with calculating armed robbery offenses then required in our analysis. Today is different; a person convicted just like Mr. Moore would today start with a minimum mandatory sentence of 169 months assuming we again found a basis to impose one month imprisonment on Mr. Moore's three other charged counts not involving the bank robberies. The United States agrees this delta allows us to find Mr. Moore is presently serving an unusually long sentence based on the law existing in March 2018 but then changed nine months later.

Our colleagues addressing these reduction motions over the past four months offer thoughtful guidance. We acknowledge our colleagues finding section 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority in the absence of contrary appellate guidance.[68] Congress created the Sentencing Commission and empowered it, through section 994(t), to define

8

extraordinary and compelling reasons warranting compassionate release.[69] These judges find the Sentencing Commission through section 1B1.13(b)(6) is wielding the power given to it by Congress.[70]

We are also aware of colleagues finding the Sentencing Commission acted unconstitutionally in amending the Guidelines to allow retroactive application of Guidelines and rely on appellate guidance issued before the Commission issued the new policy statement.[71] This branch of the analysis looks to pre-amendment decisions from our Court of Appeals and the Court of Appeals for the Seventh Circuit interpreting section 3582(c)(1)(A)(i) as preventing us from finding an incarcerated person's unusually long sentence resulting from a non-retroactive change in law constituted an extraordinary and compelling reason warranting release because the then-existing applicable policy statement applied only to Bureau of Prisons-filed motions.[72]

We are also aware of colleagues finding Guidelines section 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority notwithstanding appellate pre-amendment guidance Congress prevented district judges from finding an incarcerated person's unusually long sentence resulting from a non-retroactive change in law constituted an extraordinary and compelling reason warranting release.[73] Both the Court of Appeals for the Sixth and Eighth Circuit held non-retroactive changes in law cannot constitute extraordinary and compelling reasons warranting compassionate release.[74] But those decisions preventing non-retroactive changes in law from constituting extraordinary and compelling reasons warranting release did not apply because section 1B1.13(b)(6), the November 2023 applicable policy statement, did not then exist.[75]

We agree with the analysis finding the amendment is constitutional consistent with Congress's grant of authority to the Commission. Congress's non-retroactive change to section 924(c) mandatory minimum sentences constitutes an extraordinary and compelling reason as

9

defined by the Sentencing Commission in section 1B1.13(b)(6). Our Court of Appeals decided *Andrews* before the Sentencing Commission passed the applicable policy statement in section 1B1.13(b)(6). Our Court of Appeals previewed in *Andrews* the Sentencing Commission might one day promulgate an applicable policy statement defining extraordinary and compelling reasons for incarcerated person-filed motions.[76] This day came when the Sentencing Commission promulgated section 1B1.13(b)(6) in November 2023. The Sentencing Commission through section 1B1.13(b)(6) requires we consider Mr. Moore's March 2018 section 924(c) sentence compared to a sentence after December 2018 as a potential extraordinary and compelling reason warranting his release.

We are guided by Judge Bartle's post-amendment analysis of a motion to reduce sentence a couple weeks ago. We agree with Judge Bartle finding the Sentencing Commission's amendment section 1B1.13(b)(6) does not contradict our Court of Appeals's decision in *Andrews* because no applicable policy statement existed when our Court of Appeals decided *Andrews*.[77] We agree with Judge Bartle, "[i]t must be emphasized that *Andrews* was decided before the Sentencing Commission added 1B1.13(b)(6) to the Guidelines and before a defendant was able to rely on the policy statements in Section 1B1.13 in support of a motion for reduction in sentence."[78] Judge Bartle considered Congress's delegation of authority through section 994(t) to the Sentencing Commission to issue policy statements defining extraordinary and compelling reasons warranting compassionate release.[79] Judge Bartle highlighted our Court of Appeals in *Andrews* did not consider section 994(t) because there did not then exist an applicable policy statement defining extraordinary and compelling reasons, "[The Court of Appeals in] *Andrews*, moreover, did not reference and was not called upon to consider 28 U.S.C. § 994(t)[.]".[80] Judge Bartle held section 1B1.13(b)(6) did not conflict with *Andrews* and granted the incarcerated person compassionate

10

release after considering the section 3553(a) factors.

We appreciate reasonable minds can differ as to which of Congress's directions should be followed. We are guided by courts of appeals finding no ability to reduce the sentences with the caveat the Sentencing Commission had not issued a policy statement until November 2023.[81] Congress authorizes the Sentencing Commission to define "extraordinary and compelling" reasons as the first question in determining whether we grant compassionate release. The Sentencing Commission has now defined this policy consistent with Congress's express grant of authority to it under the well-defined rubric requiring judges consider policy statements issued by the Commission. We cannot justify the alternative result of finding the amendment unconstitutional when Congress expressly granted the Commission the authority to do exactly what it did by defining grounds for an extraordinary and compelling reason for compassionate release. Mr. Moore has shown extraordinary and compelling reasons based on the disparity in the sentences before and after December 2018. We could find grounds to release him shortly after completing the 168-month mandatory minimum sentence if our review ended here.

### B. Mr. Moore remains a danger to the community preventing us from granting him compassionate release.

But finding the disparate sentence is an extraordinary and compelling reason for release is just one factor in deciding whether to reduce the sentence. Congress requires we consider the section 3553(a) factors before granting an incarcerated person compassionate release.[82] Congress instructs we consider pertinent policy statements the Sentencing Commission issued as part of our section 3553(a) factor analysis.[83] The Sentencing Commission's policy statement concerning compassionate release motions requires we find the incarcerated person is "not a danger to the safety of any other person or to the community" before granting their compassionate release.[84]

We found two years ago Mr. Moore posed a danger to the community.[85] We commended

his then-newfound religious dedication, his strong work performance while incarcerated, and his educational achievements while incarcerated.[86]

Mr. Moore again argues he does not pose a danger to the community because he committed the robberies as an immature and young adult.[87] Mr. Moore again directs us to his educational achievements while incarcerated and his work history.[88] We considered both of these steps in March 2022.[89] Our Court of Appeals considers rehabilitation through completion of education as "expected" from incarcerated persons.[90] Mr. Moore argues he does not pose a danger to the community because no firearms were discharged during the robberies and no one was physically injured.[91] Mr. Moore began serving as a member of the FCI Petersburg Suicide Companion Program in August 2022.[92] Mr. Moore received a disciplinary infraction in December 2023 for keeping a cell phone in his prison cell.[93]

We did not assess Mr. Moore's participation in the Suicide Companion Program and his December 2023 disciplinary infraction in our March 30, 2022 Memorandum Opinion finding Mr. Moore poses a danger to the community.[94] But these developments are not equal in effect upon us. The recent disciplinary infraction raises recent concerns about Mr. Moore's ability to comply with the rules including a central concern with possessing a phone in his cell. Mr. Moore has not offered a reason for his infraction; he did not include the infraction in his outdated exhibits.[95] He remains a danger to the community in much the same way as we found two years ago.

Mr. Moore may return moving for a reduced sentence after demonstrating progress without recent infractions. We expect our Bureau of Prisons will establish programs leading to Mr. Moore's rehabilitation so he can re-enter our community properly remorseful and prepared to assist our society. Mr. Moore has proceeded in an admirable fashion in part and we encourage his continued devotion to his faith and assisting in the mental health of others in custody. But his

12

recent disciplinary infraction for a well-known prohibition gives us considerable pause. We are also concerned with his continuing argument seeking to diminish the seriousness of his crimes because he did not shoot anyone. He needs to recognize and accept the trauma he inflicted on persons working and visiting a bank facing a gun and being asked if they wanted to die for the bank's money. We heard those arguments at sentencing and since then. Mr. Moore has a way to go before we can find a reduction is warranted based on his dangerousness to the community and applying Congress's concerns with the seriousness of the armed bank robberies and acceptance of responsibility.

### III. Conclusion

We find Mr. Moore remains a danger to the community and cannot meet the factors set by Congress under section 3553(a) for release. We deny his motion for compassionate release without prejudice.

---

[1] Presentence Investigation Report ¶ 10 (Dec. 7, 2017).

[2] *Id.* ¶ 11.

[3] *Id.* ¶ 12.

[4] *Id.* ¶ 13.

[5] *Id.*

[6] *Id.* ¶ 14.

[7] *Id.* ¶ 33.

[8] *Id.* ¶ 34.

[9] *Id.* ¶ 28.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 15.

[14] *Id.*

[15] *Id.* ¶ 16.

[16] *Id.* ¶ 17.

[17] *Id.*

[18] *Id.* ¶¶ 17, 18.

[19] ECF No. 27.

[20] ECF No. 137.

[21] ECF No. 190.

[22] ECF No. 338 at 2–3.

[23] *Id.* at 2.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] ECF No. 343 at 58:23–59:4.

[28] *Id.* at 59:5–11. Mr. Moore appealed his sentence arguing he should benefit from Congress's amendment to section 924(c) reducing the mandatory minimum sentence because Congress passed the First Step Act during his appeal's pendency. *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020). Our Court of Appeals held it could not consider Congress's amendment to section 924(c) because Congress did not apply its amendment retroactively. *Id.*

[29] ECF No. 374.

[30] *Id.* at 1–4.

[31] *Id.* at 16–18.

---

[32] *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at **2–6 (E.D. Pa. Nov. 30, 2020).

[33] *Id.* at *6.

[34] ECF No. 441.

[35] *Id.* at 1–5.

[36] We denied Mr. Moore's second motion for compassionate release for this reason. *Moore*, 2022 WL 952175 at *3.

[37] *Id.* at *3.

[38] *United States v. Moore*, No. 14-209-2, 2022 WL 952175 (E.D. Pa. Mar. 30, 2022).

[39] *Id.* at *2.

[40] *Id.* at *3 (citing *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021)).

[41] *Id.* at *2.

[42] *Andrews*, 12 F.4th at 260.

[43] *Moore*, 2022 WL 952175 at *3.

[44] ECF No. 472.

[45] *Id.* at 3.

[46] Congress through section 924(c)(1)(A)(ii) imposes an eighty-four-month mandatory minimum sentence for brandishing a firearm during and in relation to any crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). Our Grand Jury returned an indictment charging Mr. Moore with two counts of violating section 924(c)(1)(A)(ii). ECF No. 27 at 9, 11.

Congress previously imposed a 300-month mandatory minimum sentence for each additional section 924(c) offense even if a grandy jury charged the additional section 924(c) offense in the same indictment. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22 ("Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking 'second or subsequent conviction under this subsection' and inserting 'violation of this subsection that occurs after a prior conviction under this subsection has become final.'"). Congress amended section 924(c) to impose the 300 month mandatory minimum sentence only if the instant charged 924(c) offense occurred "after a prior conviction under [section 924(c)] has become final." 18 U.S.C. § 924(c)(1)(C). Mr. Moore had no final section 924(c) convictions before he robbed two Wells Fargo Bank branches in 2013.

---

[47] *Id.* at 5–7.

[48] *Id.* at 8.

[49] *Id.*

[50] ECF No. 485 at 44. We referred Mr. Moore's third *pro se* Motion for compassionate release to the Federal Community Defender Office to determine whether it would seek appointment to represent Mr. Moore. ECF No. 474. The Federal Defender Office timely filed a counseled brief and presented thoughtful oral argument. ECF Nos. 477, 478, 485, 488.

Mr. Moore in his counseled response discloses the December 2023 disciplinary infraction but appends an infraction report pre-dating the December 2023 disciplinary infraction. ECF No. 485-2 at 2.

[51] ECF No. 485 at 1. Applying Congress's amended section 924(c) sentence to Mr. Moore would amend his sentence from thirty-two years to fourteen-years of imprisonment. Mr. Moore admits an amended sentence would not end before 2028. ECF No. 485 at 38. Congress through the First Step Act amended section 924(c)(1)(C) deleting the mandatory twenty-five year sentence for "second or subsequent" section 924(c) convictions. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22 ("Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking 'second or subsequent conviction under this subsection' and inserting 'violation of this subsection that occurs after a prior conviction under this subsection has become final.'"). Incarcerated persons like Mr. Moore sentenced for multiple section 924(c) violations in the same indictment received an additional twenty-five year mandatory minimum sentence for each additional section 924(c) violation. Mr. Moore received an eighty-four month sentence for brandishing a firearm during the first bank robbery and a 300 month sentence for brandishing a firearm during the second bank robbery. ECF No. 338 at 2. Mr. Moore would receive two consecutive eighty-four month sentences if we sentenced him today.

[52] ECF No. 473 at 15–20. The United States changed its view. The Department of Justice argued in the *Andrews* appeal the defendant could "ask the Sentencing Commission to revisit the definition of 'extraordinary and compelling reasons…'" Brief for Appellee United States of America, *United States v. Andrews,* No. 20-2768, 2020 WL 6940234, at *57 (3d Cir. Nov. 23, 2020).

Defendants need no longer ask the Sentencing Commission to define extraordinary and compelling. The Commission has addressed the United States' view. But the United States now changes its position.

[53] *Id.* at 20–31.

[54] ECF No. 485 at 4 (citing 28 U.S.C. §§ 994(a)(2)(C), 994(t)).

[55] *Id.* at 6–9.

16

---

[56] *Id.* at 9 (quoting *Andrews*, 12 F.4th at 259 n.4).

[57] U.S.S.G. § 1B1.13(a); 18 U.S.C. § 3553(a).

[58] *See United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020).

[59] 18 U.S.C. § 3582(c)(1)(A).

[60] 18 U.S.C. § 3553(a)(5)(A).

[61] 18 U.S.C. § 994(a)(2)(C).

[62] 28 U.S.C. § 994(t).

[63] Proposed Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, 88 Fed. Reg. 7180, 7183 (proposed Feb. 2, 2023) ("Currently, §1B1.13 provides only for motions filed by the Director of the [Bureau of Prisons] and does not account for motions filed by a defendant under the amended statute.").

[64] *Andrews*, 12 F.4th at 259 ("As the District Court noted, the text of the policy statement explicitly limits its application to Bureau-initiated motions. Thus, according to its plain language, the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions."); *see also United States v. Thacker,* 4 F.4th 569, 573 (7th Cir. 2021).

We relied on our Court of Appeals's *Andrews* decision in March 2022 finding Congress's non-retroactive application of amended section 924(c) mandatory minimum sentences did not qualify as an extraordinary and compelling reason. *Moore*, 2022 WL 952175 at *3 (E.D. Pa. Mar. 30, 2022).

[65] *Andrews*, 12 F.4th at 259 n.4.

[66] U.S.S.G. § 1B1.13(b)(6).

[67] *Id.*

[68] *See, e.g.*, *United States v. Brooks*, No. 08-61-1, 2024 WL 689766, at *7 (N.D. Okla. Feb. 20, 2024); *United States v. Ware*, No. 97-9, 2024 WL 1007427, at *7 (N.D. Ga. Mar. 6, 2024).

[69] *Brooks*, 2024 WL 689766 at *7; *Ware*, 2024 WL 1007427 at *7.

[70] *Id.*

[71] *See, e.g.*, *United States v. Carter*, No. 07-374-1, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024); *United States v. Black*, No. 05 70-4, 2024 WL 449940 (N.D. Ill. Feb. 6, 2024). Judge Beetlestone in *Carter* held the Sentencing Commission's amendment section 1B1.13(b)(6) cannot abrogate our Court of Appeals's decision in *Andrews* because our Court of Appeals interpreted section

3582(c)(1)(A) and the Sentencing Commission cannot amend a validly passed statute. *Carter*, 2024 WL 136777, at *6. Our Court of Appeals in *Andrews* held Congress through section 3582(c)(1)(A) prevented district judges from considering nonretroactive changes to mandatory minimum sentences as extraordinary and compelling reasons warranting compassionate release. *Id.* at *5. Judge Beetlestone held the Sentencing Commission's amendment section 1B1.13(b)(6) conflicts with our Court of Appeals's decision in *Andrews* and cannot abrogate the *Andrews* decision nor amend section 3582(c)(1)(A). *Id.* at *6 (citing *Neal v. United States*, 516 U.S. 284, 290 (1996)). We respectfully disagree. We are guided by Congress's grant of authority in sections 994(a)(2) and 994(t) to the Sentencing Commission to issue policy statements defining extraordinary and compelling reasons.

[72] *Carter*, 2024 WL 136777 at *6 ("*Andrews* can only be understood as a decision interpreting the text of the compassionate-release statute itself."); *Black*, 2024 WL 449940 at *7 (citing *Thacker,* 4 F.4th at 573).

[73] *United States v. Brown*, No. 2:95-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024); *United States v. Capps*, No. 11-108, 2024 WL 880554 (E.D. Mo. Jan. 31, 2024).

[74] *Brown*, 2024 WL 409062 at *4 (citing *United States v. McCall*, 56 F.4th 1048, 1065-66 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 2506, (2023)); *Capps*, 2024 WL 880554 at *6 (citing *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022), *cert. denied*, 142 S. Ct. 2781 (2022)).

[75] *Brown*, 2024 WL 409062 at *6 ("Although the Sixth Circuit concluded in *McCall* that nonretroactive changes in sentencing law did not constitute "extraordinary and compelling" circumstances, it did so without the benefit of the Commission's expert interpretation of the statutory phrase, and only in light of its 'discretion to define[] extraordinary and compelling[] without reference to the Sentencing Commission's guidance.'"); *Capps*, 2024 WL 880554 at *6 ("The Government argues that Eighth Circuit precedent—specifically, the Eighth Circuit's decisions in *United States v. Crandall*, 25 F. 4th 582 (8th Cir. 2022) and in *Rodriguez-Mendez*, supra—forecloses Capps's reliance on a nonretroactive change in the law as a ground for a sentence reduction. However, both cases were decided before the 2023 amendment to § 1B1.13 took effect.").

[76] *Andrews*, 12 F.4th at 259 n.4 ("More specifically, Congress has directed the Sentencing Commission to issue general policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). But the Commission has not yet promulgated a post–First Step Act policy statement describing what should be extraordinary and compelling in the context of prisoner-initiated motions. Though vexing, that temporary anomaly does not authorize this Court to effectively update the Commission's extant policy statement by ignoring the pre-First Step Act language relating to Bureau-initiated motions."); s*ee also Thacker,* 4 F.4th at 573 (7th Cir. 2021) ("[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute "extraordinary and compelling reasons" warranting a sentence reduction.").

---

[77] *United States v. Skeeters*, No. 05-530-1, 2024 WL 992171, at *5 (E.D. Pa. Mar. 7, 2024).

[78] *Id.*

[79] *Id.* at *2.

[80] *Id.* at *5.

[81] For example, we denied Mr. Moore's requests before November 2023 based on this analysis absent guidance from the Sentencing Commission. ECF Nos. 443, 444.

[82] 18 U.S.C. § 3582(c)(1)(A).

[83] 18 U.S.C. § 3553(a)(5)(A).

[84] U.S.S.G. 1B1.13(a)(2).

[85] *Moore*, 2022 WL 952175 at *3.

[86] *Id.*

[87] *Compare* ECF No. 441 at 1 *with* ECF No. 472 at 6.

[88] ECF No. 472 at 8.

[89] *Moore*, 2022 WL 952175 at *3.

[90] *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493 (3d Cir. Aug. 18, 2022)

[91] *Id.*

[92] ECF No. 472 at 19.

[93] ECF No. 485 at 44.

[94] *See Moore*, 2022 WL 952175 (E.D. Pa. Mar. 30, 2022).

[95] *Cf. Carter*, -- F.Supp.3d --, 2024 WL 136777, at *9 ("currently in the midst of a remarkable eight-year streak without a single disciplinary infraction").